# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **VICKI WINTERS,** | : | **Civil No.  1:20-CV-316** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **ANDREW SAUL,** | : | |
| **Commissioner of Social Security** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

## I.    Introduction

Social Security appeals often entail the evaluation of medical opinions. In this setting, the sufficiency of an Administrative Law Judge's (ALJ) evaluation of this medical opinion evidence is often a crucial issue on appeal. So it is in this case.

The plaintiff, Vicki Winters, applied for Social Security benefits, citing an array of emotional and physical impairments. Winters' disability claim was supported by two treating medical sources, both of whom opined repeatedly and emphatically that Winters' impairments left her totally disabled. The ALJ in this case expressly stated that he gave "great weight" to a number of the specific physical and emotional limitations found by these treating physicians. The ALJ, however, quixotically fashioned a residual functional capacity assessment for Winters that was entirely at odds with the opinions that he found deserved great weight. Based upon

these internally inconsistent findings, the ALJ then denied Winters' claim for Social Security benefits.

In our view, more is needed here. Accordingly, for the reasons set forth below, we will direct that this case be remanded for further consideration by the Commissioner.

## II.   <u>Statement of Facts and of the Case</u>

On January 6, 2017, Vicki Winters filed an application for disability benefits pursuant to Title II of the Social Security Act, alleging an onset of disability beginning in July of 2016. (Tr. 24). Winters was born on August 12, 1967, was 48 years old at the time of her disability application, and she had attained the age of 50 while this application was pending agency review. (Tr. 33). Thus, Winters was a worker who was closely approaching advanced age under the Commissioner's regulations at the time of the alleged onset of her disability. (Tr. 33).[1]

In her disability application, Winters alleged that she suffered from a constellation of physical and emotional impairments, including some impairments related to a traumatic brain injury she had suffered in an automobile accident. (Tr. 176-79, 249-56). In particular, Winters' function report provided an anxious and

---

[1] Curiously, in the initial February 2017 agency disability determination, the non-examining and non-treating sources erroneously indicated that Winters was a younger worker. (Tr. 176). She was not. We cannot determine the degree to which this this error influenced the agency review process.

anguished account of the disabling effects of her emotional and physical impairments. (Tr. 249-56).  Winters' description of her medical and psychological impairments was confirmed and corroborated by Kim Reigle, a friend who had known the plaintiff for more than four decades. (Tr. 237-45). Reigle explained that Winters' anxiety, depression, weakness and fatigue frequently left her unable to perform even simple tasks. (Id.)

Winters' disability application was also strongly supported by two treating sources, Dr. Eugene Stish and Dr. Beth Cohen. Dr. Stish, Winters' primary care physician, completed disability questionnaires for Winters on several occasions. (Tr. 438-44, 504-08). In these questionnaires, Dr. Stish detailed Winters' struggles with anxiety depression and PTSD. (Id.) The doctor stated unequivocally that Winters could not return to full-time or part-time work, and indicated that she was not able to perform any of the following tasks due to her impairments: directing, controlling, planning, performing repetitive work, influencing people, undertaking a variety of duties, expressing personal feeling, working alone or under stress, following instructions or attaining precise goals, and making judgments and decisions. (Tr. 441).

Dr. Stish also specifically found that Winters faced physical limitations. In particular, the doctor concluded that she could lift no more than 10 pounds occasionally, a limitation that was tantamount to confining Winters to sedentary

work. (Tr. 442). Dr. Stish reaffirmed these findings in a March 1, 2018 letter in which he stated unequivocally that: "I have made this attempt on behalf of Ms. Winters to state emphatically that I believe her to be totally disabled based upon my examination of her and, more importantly, based on the examinations of previous physician specialists made over many years . . . ." (Tr. 508).

Dr. Stish's findings and conclusions were echoed by Winters' treating neurologist, Dr. Beth Cohen, who explained in February of 2018 that Winters "had multiple strokes, brain cyst, traumatic brain injury, leading to cognitive dysfunction, PTSD anxiety, marked right upper extremity tremor, and nerve damage in right hand as well." (Tr. 503). Dr. Cohen opined that Winters could leave her home "only rarely," and stated that: "She is completely and totally disabled. To imply she can do a sedentary job is cruel and ridiculous." (Id.) Dr. Cohen further expanded upon these findings in medical questionnaires that she completed in connection with Winters' disability application. (Tr. 519-34). Like Dr. Stish, Dr. Cohen limited Winters to lifting 10 pounds or less. (Tr. 528). Thus, Dr. Cohen found that Winters was not capable of performing more than sedentary work. However, given the constellation of Winters' other emotional and physical impairments Dr. Cohen concluded that Winters was "100% disabled." (Tr. 525).

The findings of these two treating sources that Winters was limited, at most, to sedentary work had great potential significance since Winters was a worker who

was closely approaching and surpassed advanced age during the pendency of these agency proceedings. The Commissioner has promulgated guidelines on disability determinations that account for a claimant's physical abilities, age, education, and vocational skills as well as other factors, such as their RFC. See 20 C.F.R., Part 404, Subpart P, Appendix 2. These guidelines prescribe various grids, and persons who fall within the grids may be defined as disabled by application of these rules. This rule-making process relieves the Secretary of the need to rely on vocational experts by establishing, through rulemaking, the types and numbers of jobs that exist in the national economy where a claimant's qualifications correspond to the job requirements identified by a particular rule. Heckler v. Campbell, 461 U.S. 458, 461-62, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

Thus, these regulations provide that the grids will direct a conclusion as to whether an individual is or is not disabled where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule. 20 C.F.R. pt. 404, Subpt. P, Appx. 2, § 200(a). Under these Medical Vocational guidelines, if Winters—a person who was closely approaching and passed advanced age—was found to be able to only undertake sedentary work, the grids may have mandated a finding that she was disabled. See id. §§ 201.12, 201.14; Riley v. Colvin, No. 3:13-CV-1223, 2014 WL 4796602, at *8 (M.D. Pa. Sept. 26, 2014).

5

It is against this clinical backdrop that a hearing was held on this disability application on September 12, 2018. (Tr. 40-108). Winters testified at this hearing, describing the disabling effects of her physical and psychological impairments. (Tr. 45-95). Notably, despite the two treating source opinions, which indicated that Winters could perform no more than a limited range of sedentary work, the ALJ initially indicated that he was considering her case as one that only involved cognitive limitations. (Tr. 56-58). Only after Winters stated that she had physical limitations did the ALJ conduct a colloquy concerning those physical impairments. (Tr. 58-70). Despite the evidence of these physical limitations, the ALJ then concluded at Step 2 that Winters had no severe physical limitations and found that she could perform work at all exertional levels. (Tr. 27, 28).

Following this hearing, the ALJ issued a decision on November 6, 2018 denying Winters' application for benefits. (Tr. 21-34). In that decision, the ALJ first concluded the Winters met the insured status requirements of the Social Security Act through March 31, 2020 and had not engaged in any substantial gainful activity since her alleged onset date of disability in July of 2016. (Tr. 26). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Winters' depression, anxiety, PTSD, agoraphobia, cognitive impairment, and personality disorder were all severe impairments. (Doc. 27). Notably, the ALJ's decision only focused upon Winters' emotional impairments. The ALJ made no findings regarding

6

the existence or severity of Winters' physical limitations at Step 2. (Id.)  The ALJ's failure to address the severity of these physical limitations at Step 2 was puzzling since Winters and her treating physicians had stated that she suffered from severe debilitating physical impairments that limited her to no more than sedentary work. At Step 3, the ALJ determined that none of these impairments met or medically equaled the severity of one of the listed impairments. (Tr. 27-28).

Between Steps 3 and 4, the ALJ fashioned a residual functional capacity assessment ("RFC") for Winters. This RFC assessment necessarily involved an evaluation of the treating source opinions of Dr. Stish and Dr. Cohen, both of whom had consistently and emphatically stated that Winters was totally disabled.

The ALJ's evaluation of these treating source opinions was marked by internal inconsistencies that leave more questions than answers. For example, Winters' treating doctor, Dr. Stish, opined that she had disabling psychological limitations as result of her PTSD, generalized anxiety disorder, major depressive disorder and a history of traumatic brain injury causing cognitive impairments (Tr. 439-41). In particular, Dr. Stish stated that Winters was unable to perform repetitive work, perform a variety of duties and move from task to task without loss of efficiency, work alone or in isolation, perform under stress, perform with demands, follow specific instructions, or make judgments and decisions (Tr. 441). In fashioning the RFC for Winters, the ALJ acknowledged the sweeping array of profound mental

impairments found by Dr. Stish and then announced that he "gives this opinion of Dr. Stish, great weight." (Tr. 31). Specifically, the ALJ concluded as follows:

> Dr. Stish opined the claimant is unable to perform directing, controlling, planning, perform repetitive work, influence people, move from task to task without loss of efficiency, express personal feelings, work alone or in isolation, perform under stress, perform with demands, follow specific instructions and make judgments and decisions. *The undersigned gives this opinion of Dr. Shish, great weight.*

(Id.) (emphasis added). However, immediately after affording "great weight" to Dr. Stish's opinion that Winters was completely unable to perform these cognitive tasks that are essential to the workplace, the ALJ without further explanation reached a conclusion that was at odds with this opinion, stating that Winters only suffered from moderate mental impairments. (Id.)

The ALJ went on to totally discount Dr. Stish's opinion that Winters could lift no more than 10 pounds, affording that aspect of the treating source's opinion which limited Winters to sedentary work "no weight." (Id.) The ALJ then made findings regarding the opinion of Winters' treating neurologist, Dr. Cohen, which were internally inconsistent and cannot be readily reconciled with the assessment of Dr. Stish's medical opinion. Thus, while the ALJ gave "no weight" to Dr. Stish's medical opinion that Winters was limited to sedentary work, he "g[a]ve[] great weight to Dr. Cohen's opinion that [Winters] can perform sedentary work." (Tr. 32). The incongruity between these two medical opinion evaluations was heightened when the ALJ then fashioned a physical RFC for Winters that was entirely

inconsistent with Dr. Cohen's opinion that Winters could perform sedentary work, an opinion that he found deserved "great weight".

That RFC provided that Winters could "perform a full range of work at all exertional levels," (Tr. 28), a conclusion that was flatly at odds with the medical opinion of Dr. Cohen which had been given "great weight" by the ALJ. This RFC then prescribed a series of mental health limitations which were inconsistent with Dr. Stish's conclusion that Winters was "unable to perform directing, controlling, planning, perform repetitive work, influence people, move from task to task without loss of efficiency, express personal feelings, work alone or in isolation, perform under stress, perform with demands, follow specific instructions and make judgments and decisions," a treating source opinion that the ALJ also gave "great weight." (Tr. 31). Specifically, the ALJ found that Winters was only moderately limited in the workplace, could manage frequent changes in work settings, could make simple work-related decisions, and could have frequent contact with supervisors and co-workers. (Tr. 28).

Having arrived at this RFC assessment that was inconsistent with the medical opinions that the ALJ had given great weight, the ALJ found at Step 4 that Winters could not perform her past work, (Tr. 32), but determined at Step 5 that there were a number of other jobs in the national economy that she could perform. (Tr. 32-34).

Accordingly, the ALJ concluded that Winters did not meet the stringent standard for disability set by the Social Security Act and denied her disability claim. (Tr. 21).

This appeal followed. (Doc. 1). On appeal, Winters argues, *inter alia*, that the ALJ's internally inconsistent findings regarding the weight given to medical opinions, and the RFC found by the ALJ based on those opinions, at a minimum compels a remand of this case. This case is fully briefed and is, therefore, ripe for resolution. For the reasons set forth below, we agree that this case should be remanded for further consideration by the Commissioner.

## III.   Discussion

### A.   Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. § 405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not

substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

Several fundamental legal propositions flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford, 399 F.3d at 552). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

11

> In <u>Burnett</u>, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. <u>Id.</u> at 120; <u>see</u> <u>Jones v. Barnhart</u>, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "<u>Burnett</u> does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." <u>Jones</u>, 364 F.3d at 505.

<u>Diaz v. Comm'r of Soc. Sec.</u>, 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review. Further, when this evaluation reveals material internal inconsistencies in the ALJ's opinion, remand is also required. <u>See</u> <u>Rodriguez v. Comm'r of Soc. Sec.</u>, 231 F. App'x 103, 106 n. 2 (3d Cir. 2007).

### B.   <u>Initial Burdens of Proof, Persuasion, and Articulation for the ALJ</u>

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); <u>see also</u> 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this

requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R.

§§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a

physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living to fashion an RFC, courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings, 129 F. Supp. 3d at 214–15. In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also

Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

Further, in conducting this assessment "[t]he ALJ must consider all relevant evidence when determining an individual's residual functional capacity." Fargnoli v. Massanari, 247 F.3d 34, 41 (3d Cir. 2001). An ALJ must also "explain his reasons for discounting all of the pertinent evidence before him in making his residual functional capacity determination." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000). Therefore:

> Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. See Plummer, 186 F.3d at 429; Cotter, 642 F.2d at 705. "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." Cotter, 642 F.2d at 705.

Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000). See Riley v. Colvin, No. 3:13-CV-1223, 2014 WL 4796602, at *7 (M.D. Pa. Sept. 26, 2014).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this

burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999).

### C. **Legal Benchmarks for the ALJ's Assessment of Medical Opinion Evidence.**

The Commissioner's regulations also set standards for the evaluation of medical evidence, and define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's]

17

symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairments(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Regardless of its source, the ALJ is required to evaluate every medical opinion received. 20 C.F.R. § 404.1527(c).

In deciding what weight to accord competing medical opinions and evidence, the ALJ is guided by factors outlined in 20 C.F.R. § 404.1527(c). "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180 at *2. Treating sources have the closest ties to the claimant, and therefore their opinions generally entitled to more weight. See 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources . . ."); 20 C.F.R. § 404.1502 (defining treating source). Under some circumstances, the medical opinion of a treating source may even be entitled to controlling weight. 20 C.F.R. § 404.1527(c)(2); see also SSR 96-2p, 1996 WL 374188 (explaining that controlling weight may be given to a treating source's medical opinion only where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and it is not inconsistent with the other substantial evidence in the case record).

Where no medical source opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where

applicable, in deciding the weight given to any non-controlling medical opinions: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c).

Oftentimes, as in this case, an ALJ must evaluate medical opinions and records tendered by a number of different medical sources. Judicial review of this aspect of ALJ decision-making is guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, when weighing competing medical opinions "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.' " Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Mason, 994 F.2d at 1066). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

### D.    A Remand is Appropriate in this Case.

As we have noted, an ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter, 642 F.2d at 704. Furthermore, the ALJ must also "indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck, 181 F.3d at 433.

This cardinal principle applies with particular force to two types of assessments made by ALJs. First, it is well-settled that "[t]he ALJ must consider all relevant evidence when determining an individual's residual functional capacity." Fargnoli v. Massanari, 247 F.3d 34, 41 (3d Cir. 2001). Therefore, an ALJ must "explain his reasons for discounting all of the pertinent evidence before him in making his residual functional capacity determination." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000). Second, with respect to an ALJ's assessment of medical opinion evidence, it is clear that "[w]here . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.' " Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer, 186 F.3d at 429)).

Guided by these legal tenets, we find in this case that the ALJ's decision fails the articulation and internal consistency tests mandated by the courts. Rather,

unexplained inconsistencies abound in this decision. For example, there are patent inconsistencies between the ALJ's weighing of the opinion evidence and the RFC that was crafted in this case.  The ALJ's decision purported to give great weight to the mental limitations found by Dr. Stish, who found that Winters was "unable to perform directing, controlling, planning, perform repetitive work, influence people, move from task to task without loss of efficiency, express personal feelings, work alone or in isolation, perform under stress, perform with demands, follow specific instructions and make judgments and decisions." (Tr. 31). Likewise, the ALJ "g[a]ve[] great weight to Dr. Cohen's opinion that [Winters] can perform sedentary work." (Tr. 32). Yet, in defining Winters' RFC, the ALJ followed none of the opinions he had given great weight. Instead, the ALJ concluded that Winters could "perform a full range of work at all exertional levels;" found that Winters was only moderately limited in the workplace; and determined that she could manage frequent changes in work settings; could make simple work related decisions; and could have frequent contact with supervisors and co-workers. (Tr. 28).

The ALJ's decision also revealed inconsistencies in the evaluation of the consistent opinions expressed by both treating sources. Thus, while the ALJ gave "no weight" to Dr. Stish's medical opinion that Winters was limited to sedentary work, he "g[a]ve[] great weight to Dr. Cohen's opinion that [Winters] can perform sedentary work." (Tr. 32).

None of these internal inconsistencies are adequately explained by the ALJ,[2] and the inconsistent evaluation of these treating source opinions potentially prejudiced Winters in the presentation of this claim. It is undisputed that, as a worker who closely approached and passed advanced age, Winters' disability claim was subject to consideration under the Commissioner's Medical-Vocational guidelines. See 20 C.F.R., Part 404, Subpart P, Appendix 2. These guidelines prescribe various grids, and persons who fall within the grids may be defined as disabled by application of these rules. Under these Medical Vocational guidelines, if Winters— a person who closely approached and surpassed advanced age—was limited to unskilled sedentary work, the grids may have mandated a finding that she was disabled. See id., §§ 201.12, 201.14; Riley v. Colvin, No. 3:13-CV-1223, 2014 WL 4796602, at *8 (M.D. Pa. Sept. 26, 2014). Thus, the failure to address the treating source consensus that Winters could only perform sedentary work, standing alone, could be outcome determinative in this matter.[3] Given this fact, a remand is required.

---

[2] We note that, on appeal, the Commissioner has argued with great vigor that these patent inconsistencies could be reconciled through a careful review of the medical record and reliance on some other unarticulated, rationale for this decision.. This may be so, but we must decline the invitation to re-weigh the evidence and construct an alternate rationale for the ALJ's decision. Instead, we are guided by the rationale provided by the ALJ, a rationale which we find was flawed and riddled with inconsistencies requiring a remand.

[3] Indeed, Winters argues that at least a partial award of benefits is warranted here given some of the ALJ's findings and the application of the Medical-Vocational guidelines. Specifically, Winters contends that the ALJ's apparent findings

Yet, while case law calls for a remand and further proceedings by the ALJ in this case, assessing this claim in light of this evidence, nothing in our opinion should be construed as suggesting what the outcome of that final and full analysis should be. Rather, that final assessment of the evidence must await a thorough consideration and development of this evidence on remand by an ALJ. Therefore, nothing in this opinion should be deemed as expressing a view on what the ultimate outcome of any reassessment of this evidence should be. Rather, that task should remain the duty and province of the ALJ on remand.

## IV.   <u>Conclusion</u>

Accordingly, for the foregoing reasons, IT IS ORDERED that this case be REMANDED for further consideration of the Plaintiff's application.

An appropriate order follows.

/s/ Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge

---

regarding her sedentary work capabilities, and her unskilled work potential, compel an award of benefits once she attained the age of 50. While there is some force to this argument, we will decline this invitation since the plaintiff's contention would require us to accept some ALJ findings that we have found to be unsupported and inconsistent and then apply those findings to conclude that the ALJ implicitly awarded benefits in an opinion that explicitly denied those benefits. Simply put, the ALJ's decision lacks sufficient consistency and coherence to allow us to reach any definitive conclusions on the merits of this claim. Therefore, a remand—and only a remand—is appropriate here.